IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| MONICA MICHELLE GONZALES, § § *Plaintiff,* § § vs. § § KILOLO KIJAKAZI, COMMISSIONER § OF THE SOCIAL SECURITY § ADMINISTRATION;[1] § § *Defendant.* § | SA-20-CV-00498-FB |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation concerns Plaintiff's request for review of the administrative denial of her application for a period of disability and disability insurance benefits ("DIB") under Title II and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("SSA"), 42 U.S.C. §§ 405(g), 1383(c)(3). All pretrial matters in this case have been referred to the undersigned for disposition pursuant to Western District of Texas Local Rule CV-72 and Appendix C, and the undersigned has authority to enter a recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). After considering Plaintiff's Opening Brief [#18], Defendant's Brief in Support of the Commissioner's Decision [#20], Plaintiff's Reply Brief[#24], the transcript ("Tr.") of the SSA proceedings [#11], the other pleadings on file, the applicable case authority and relevant statutory and regulatory provisions, and the entire record in this matter, the undersigned finds that substantial evidence supports the final decision of the Commissioner

---

[1] Kilolo Kijakazi is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is hereby substituted for former Commissioner Andrew Saul as the Defendant in this suit.

1

denying Plaintiff's application for SSI and DIB. The undersigned therefore **recommends** that the Commissioner's decision be **AFFIRMED**.

## I. Jurisdiction

This Court has jurisdiction to review a decision of the Social Security Administration pursuant to 42 U.S.C. § 405(g). The undersigned has authority to enter this Report and Recommendation pursuant to 28 U.S.C. § 636(c)(1).

## II. Legal Standard

In reviewing the denial of benefits, the Court is limited to a determination of whether the Commissioner, through the ALJ's decision,[2] applied the proper legal standards and whether the Commissioner's decision is supported by substantial evidence. *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence is more than a scintilla, less than preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Villa v. Sullivan*, 895 F.2d 1019, 1021–22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). The Court may not reweigh the evidence or substitute its judgment for that of the Commissioner. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). Conflicts in the evidence and credibility assessments are for the Commissioner, not the court, to resolve. *Id.* While substantial deference is afforded the Commissioner's factual findings, the Commissioner's legal conclusions, and claims of procedural error, are reviewed *de novo*. *See Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

---

[2] In this case, because the Appeals Council declined to review the ALJ's decision, the decision of the ALJ constitutes the final decision of the Commissioner, and the ALJ's factual findings and legal conclusions are imputed to the Commissioner. *See Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005); *Harris v. Apfel*, 209 F.3d 413, 414 (5th Cir. 2000).

In determining if a claimant is disabled, the Commissioner uses a sequential, five-step approach, which considers whether: (1) the claimant is currently engaged in substantial gainful activity, (2) she has a severe impairment, (3) the impairment meets the severity of an impairment enumerated in the relevant regulations, (4) it prevents the claimant from performing past relevant work, and (5) it prevents her from doing any relevant work. *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018). If the claimant gets past the first four stages, then the burden shifts to the Commissioner on the fifth step to prove the claimant's employability. *Id.* A finding that a claimant is not disabled at any point in the five-step review is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987); *see also* 20 C.F.R. § 404.1520(a)(4).

### III. Factual Background

Plaintiff Monica Michelle Gonzales ("Plaintiff") filed applications for DIB and SSI on August 11, 2017, alleging disability beginning on July 10, 2016. (Tr. 10.) At the time of her DIB application, Plaintiff was a 45-year-old high school graduate. (Tr. 21.) Plaintiff has past relevant work experience as a data entry clerk, billing typist, and receptionist. (Tr. 21.) Plaintiff's applications for DIB and SSI were denied initially on April 9, 2018, and again upon reconsideration on August 9, 2018. (Tr. 10.)

Following the denial of her claim, Plaintiff requested an administrative hearing. Plaintiff and her attorney Andree R. Jacques attended the administrative hearing before Administrative Law Judge ("ALJ") Ben Barnett on February 7, 2019. (Tr. 30.) Plaintiff, Plaintiff's mother, and vocational expert ("VE") Evelyn R. Hartman provided testimony at the hearing. (Tr. 30–31.)

The ALJ issued an unfavorable decision on May 21, 2019. (Tr. 10–23.) The ALJ found that Plaintiff met the insured status requirements of the SSA and applied the five-step sequential

analysis required by SSA regulations. At step one of the analysis, the ALJ found that Plaintiff has not engaged in substantial gainful activity since July 10, 2016. (Tr. 13.) At step two, the ALJ found Plaintiff to have the following severe impairments: degenerative disc disease, obesity, fibromyalgia, obstructive sleep apnea, migraine headaches, hyperlipidemia, hypertension, chronic pain syndrome, diabetes mellitus, persistent depressive disorder, panic disorder, general anxiety disorder, somatic symptom disorder, personality disorder, and psychosis. (*Id.*) The ALJ found Plaintiff's impairments of asthma and carpal tunnel syndrome to be not severe. (*Id.*) At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal the severity of one of the listed impairments in the applicable Social Security regulations so as to render Plaintiff presumptively disabled. (*Id.*)

Before reaching step four of the analysis, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to:

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except never climbing ladders, ropes, or scaffolds. She can occasionally climb ramps and stairs, balance, stoop, crouch, kneel, and crawl. She can frequently handle, finger, and reach overhead bilaterally. She should avoid all exposure to hazards such as operational control of moving machinery and unprotected heights. She should not drive commercially. She is limited to simple, routine, and repetitive tasks. She can tolerate occasional changes in work setting. She should have only superficial interaction with the public and coworkers.

(Tr. 15.) At step four, the ALJ determined that Plaintiff is incapable of performing her past relevant work as a data entry clerk, billing typist, and receptionist. (Tr. 21.) At step five, the ALJ determined that, considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (*Id.*) Accordingly, the ALJ determined that Plaintiff is not disabled for purposes of the Act, and therefore is not entitled to receive DIB or SSI. (Tr. 23.)

## IV. Analysis

Plaintiff raises two points of error in this appeal: (1) the ALJ erred at step three in finding Plaintiff's mental impairments to be "moderate" under the Psychiatric Review Technique because he did not consider the severity and history of Plaintiff's mental impairments and their effects; and (2) the ALJ erred in his RFC determination because he failed to consider the combination of all Plaintiff's severe and not severe mental and physical impairments and their effects, and he wrongly discredited Plaintiff's hearing testimony.[3] The undersigned disagrees with Plaintiff on both points, finds that the ALJ did not commit reversible error, and finds that substantial evidence supports the ALJ's decision finding Plaintiff not disabled.

**A.  The ALJ did not err in finding Plaintiff to have only moderate limitations in all categories of the Psychiatric Review Technique.**

Plaintiff claims that the ALJ erred at step three in his analysis of Plaintiff's mental impairments because the ALJ found Plaintiff's mental impairments to be severe at step two, yet found that they present only moderate limitations in step three. Plaintiff argues that the ALJ "cherry-picked" the record and ignored medical evidence that, if included, would have shown that Plaintiff's mental impairments satisfy the criteria for at least one Listing. The Commissioner responds that the ALJ properly considered all the evidence in the record, and Plaintiff failed to meet her burden to show how the record supports each criteria of the relevant Listing(s). The undersigned agrees with the Commissioner.

---

[3] In Plaintiff's Brief, the title of Plaintiff's second issue includes the following: "the ALJ's failure to present the effects of all impairments to the VE in hypothetical examples made the VE expert testimony inaccurate." However, Plaintiff does not sufficiently explain this argument in her briefing or how it is an error distinct from the ALJ's allegedly flawed RFC. Plaintiff's discussion of the second issue on appeal focuses on the ALJ's RFC determination and the failure of the ALJ to credit Plaintiff's hearing testimony in evaluating the extent of her limitations. For this reason, the undersigned will focus on the arguments sufficiently briefed by Plaintiff, not any specific error related to the ALJ's hypotheticals to the VE.

A step two determination of severity is entirely different than the step three determination of whether an impairment meets a Listing. *See Boyd v. Apfel*, 239 F.3d 698, 706 (5th Cir. 2001) ("Even if the degree of impairment is 'severe,' the regulations require an assessment of whether the impairment meets or exceeds the criteria of a [Listing].")  To determine whether a mental impairment satisfies the requirements of a specific Listing and renders a claimant presumptively disabled, the agency must use the Psychiatric Review Technique ("PRT"). *See* 20 C.F.R. § 416.920a.  Using this technique, the ALJ must rate the degree of functional limitations in four areas: the ability to understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt and manage oneself. *Id*. at § 416.920a(c)(3).  The ALJ rates the claimant's functional limitations in these four areas on a five-point scale: none, mild, moderate, marked, or extreme. *Id*. at § 416.920a(c)(4); *see* 20 C.F.R. Pt. 404, Subpt. P, app. 1 § 12.00F(2)(b).  For an impairment to fall under a Listing, the impairment must satisfy what is called the "Paragraph B" criteria, which is a finding of at least one extreme or two marked limitations in these four areas. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A)(2)(b).  The ALJ must document the application of the PRT in his decision by showing the history, examinations, and findings, and the ALJ must be specific about each functional area. *See* 20 C.F.R. § 414.920a(e)(4).

Here, the ALJ conducted the PRT inquiry regarding Plaintiff's mental impairments with respect to Listings 12.03 (Psychotic Disorders), 12.04 (Depressive Disorders), 12.06 (Anxiety-related Disorders), 12.07 (Somatic Symptom Disorders), and 12.08 (Personality Disorders). (Tr. 14.)  The ALJ found that the severity of Plaintiff's impairments did not meet or medically equal the Paragraph B criteria for any of these Listings because the ALJ found Plaintiff to have only moderate restrictions in each of the four categories of functioning. (*Id*.)  Where Paragraph B

criteria are not satisfied, the agency assesses the "Paragraph C" criteria for each Listing. 20 C.F.R. § Pt. 404, Subpt. P, App. 1.  The ALJ considered the Paragraph C criteria for the above-mentioned Listings, but found that the criteria were not satisfied.  (Tr. 15.)

In undertaking the Paragraph B and Paragraph C analyses, the ALJ cited records from Plaintiff's longtime social worker, Delores Jackson, LCSW; the mental status evaluation of Javier Villanueva, Ph.D.; the neurological exam records of Bryce Kirkman, DO; and the notes of Romana Kleinguenther, M.D.  The ALJ based his findings of only moderate limitations on records that indicated that Plaintiff's thought form was coherent and logical, she had a good tolerance for frustration, and she had good comprehension of simple and complex commands. (Tr. 1654, 1656.)  Further, the ALJ gave weight to Dr. Villanueva's description of Plaintiff as open, friendly, cooperative, and able to maintain eye contact.  (Tr. 1654.)  The ALJ acknowledged Dr. Villanueva's notes that indicated Plaintiff's concentration was slightly limited and her memory was below normal limits, but he cited other contemporaneous records that described her concentration and memory (both recent and remote) as normal and intact.  (Tr. 425, 454, 1654.)  The ALJ also cited records that indicated that Plaintiff's judgment and insight were good and that she had normal behavior.  (Tr. 1654.)

Plaintiff argues that the ALJ's Paragraph B analysis was flawed because he "cherry-picked" the record and ignored contradictory medical records that show Plaintiff's mental impairments present more than "moderate" limitations to Plaintiff's functioning.  Plaintiff points to specific pieces of evidence that she contends should have been included in the analysis: (1) a check-box form filled out by James Rocha, M.D., whom she calls her treating physician, from 2015 indicating that Plaintiff is "unable to work because of permanent disability" from a panic disorder, agoraphobia, and major depressive disorder, is unable to work in a closed environment,

and lacks focus for long term tasks (Tr. 335–36); (2) Plaintiff's and her mother's testimony at her administrative hearing, which described Plaintiff's angry outbursts, her history of employment termination for lashing out at others, and her past physical violence against her sisters (Tr. 44, 57); and (3) Plaintiff's statements recorded in doctors' notes that she has panic and anxiety attacks as well as depression daily (Tr. 1305, 1331, 1489). Plaintiff argues that "if these records were the only mental health facts mentioned, the Plaintiff would meet some of the psychological listings mentioned by the ALJ [] because she takes a number of mental health drugs, none of which have stabilized her or obliterated psychosis." (Pl. Brief [#18], at 6.)

Although the ALJ must consider all of the evidence in the record, he is not required to elaborate on each and every piece of evidence in his written opinion. *See Falco v. Shalala,* 27 F.3d 160, 163 (5th Cir. 1994) (rejecting rule requiring ALJ to specify every rejected and accepted piece of evidence). It is not this Court's role to "reweigh the evidence in the record, try the issues *de novo*, or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision." *Newton*, 209 F.3d at 452. A reviewing court may only vacate a judgment if the "substantial rights" of a party have been affected. *Mays v. Bowen*, 837 F.2d 1362, 1362 (5th Cir 1988).

In this instance, Plaintiff's substantial rights would be affected where, if not for the ALJ's error, she would have met her burden of demonstrating that she meets the requirements for a given Listing. *See Audler v. Astrue*, 501 F.3d 446, 449 (5th Cir. 2007). In *Audler*, the Fifth Circuit determined that remand to the Commissioner was required because the record contained medical reports with **_uncontroverted findings_** that, if accepted by the ALJ, would have satisfied the criteria for meeting a Listing's requirements. *See id.* at 448–49 (emphasis added). This is not the case here.

While the ALJ failed to discuss some evidence in the record favorable to Plaintiff's position that her mental limitations are more than moderate, including certain aspects of Plaintiff's and her mother's hearing testimony, this evidence was not uncontroverted, in contrast to the evidence at issue in *Audler*. Plaintiff's and her mother's hearing testimony included descriptions of Plaintiff's difficulty with social interactions (Tr. 44, 47), yet Dr. Villanueva found Plaintiff to be friendly and with good frustration tolerance (Tr. 1654, 1656). While Plaintiff reported in doctors' visits that she had panic and anxiety attacks and depression (Tr. 1305, 1331, 1489), contemporaneous medical assessments show that Plaintiff had normal attention, was cooperative, and had logical and coherent thought (Tr. 1305). Plaintiff emphasizes Dr. Rocha's check-box form from 2015 that labeled Plaintiff as permanently disabled due to her mental impairments, but this form is contradicted by the evidence cited by the ALJ. Further, although Plaintiff refers to Dr. Rocha as her treating physician, Plaintiff does not mention any other medical evidence from Dr. Rocha besides the 2015 check-box form, and the undersigned does not see any other records from Dr. Rocha in the record that would establish a long-term treatment relationship.

Even if the ALJ had specifically discussed the pieces of the record identified by Plaintiff in his PRT analysis, this evidence does not constitute uncontroverted findings that, if accepted by the ALJ, would have satisfied the Paragraph B criteria and satisfied a Listing requirement. For these reasons, the undersigned finds that the ALJ did not err at step three in evaluating Plaintiff's mental impairments.

**2.     The ALJ did not err in his RFC determination.**

Plaintiff's second point of error is that the ALJ erred in his RFC determination. Plaintiff primarily argues that the ALJ failed to assess her combination of severe and non-severe mental

and physical impairments because he failed to properly support his determination with medical evidence, and Plaintiff secondarily argues that the ALJ improperly discredited her hearing testimony. The Commissioner responds that the ALJ *did* properly consider Plaintiff's impairments and that the ALJ cited evidence in the record that contradicted Plaintiff's testimony. The undersigned agrees with the Commissioner.

The RFC determination is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis, which is eight hours a day, for five days a week, or an equivalent work schedule. *See Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001) (citing SSR 96–8p, 1996 WL 374184, *1–2 (S.S.A. 1996)). "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Id*.; 1996 WL 374184, at *3. The RFC assessment must be based on all relevant evidence in the claimant's record, *Perez v Barnhart*, 415 F.3d 457, 462 (5th Cir. 2005), and must include a resolution of any inconsistencies in the evidence, *Myers*, 238 F.3d at 620. The RFC assessment must also include a narrative discussion describing how the evidence supports each conclusion. *Id*.; 1996 WL 374184, at *7. "At bottom, however, RFC determinations are inherently intertwined with matters of credibility, and the ALJ's credibility determinations are generally entitled to great deference." *Acosta v. Astrue*, 865 F. Supp. 2d 767, 790 (W.D. Tex. 2012) (citing *Newton*, 209 F.3d at 459 (internal quotation omitted)).

Here, the ALJ discussed at length the medical evidence concerning Plaintiff's physical and mental impairments. (Tr. 15–20.) The ALJ ultimately found that Plaintiff had the RFC to:

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except never climbing ladders, ropes, or scaffolds. She can occasionally climb ramps and stairs, balance, stoop, crouch, kneel, and crawl. She can frequently handle, finger, and reach overhead bilaterally. She should avoid all exposure to hazards such as

10

> operational control of moving machinery and unprotected heights. She should not drive commercially. She is limited to simple, routine, and repetitive tasks. She can tolerate occasional changes in work setting. She should have only superficial interaction with the public and coworkers.

(Tr. 15.) The ALJ specifically considered Plaintiff's impairments of fibromyalgia, chronic pain syndrome, obesity, sleep apnea, migraines, diabetes mellitus, hyperlipidemia, and hypertension as well as the overlap in Plaintiff's symptoms and different mental impairments. (Tr. 16–19.) While the ALJ does not name the rest of Plaintiff's impairments, he considered the medical evidence related to degenerative disc disease (Tr. 17) and considered all of Plaintiff's mental impairments together, claiming there is "substantial overlap in symptomology between different mental impairments" (Tr. 19).

Plaintiff argues that the ALJ's RFC assessment did not include "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence," in accordance with SSR 96-8p. However, the ALJ supported his RFC determination with a five-page discussion where he extensively cited the record. In this section of his decision, the ALJ referenced Plaintiff's and her mother's testimony (Tr. 40–68), physical exam notes and radiology analysis of Rizwan Sadiq, M.D. (Tr. 1533), lumbar spine exam notes of John Stoll, M.D. (Tr. 376), exam notes of social worker Delores Jackson (Tr. 454 518, 537), mental status exam and lab results notes of Dr. Robert Troiana (Tr. 1255), physical exam notes of Dr. Romana Kleinguenther (Tr. 1313), mental status examination notes of Dr. Villlanueva (Tr. 1654), as well as other evidence. Therefore, the ALJ did not commit any reversible error in supporting his RFC determination with medical and nonmedical evidence from the record and assessing Plaintiff's severe and non-severe mental and physical impairments.

Nor did the ALJ improperly discredit Plaintiff's hearing testimony. The ALJ found Plaintiff's hearing testimony about the intensity of her physical and mental symptoms to be "not

entirely consistent with the medical evidence." (Tr. 16.) An ALJ's assessment of a claimant's credibility is accorded great deference. 42 U.S.C. § 423(d)(1)(A). Where there are inconsistencies between the claimant's alleged limitations and the evidence as a whole, an ALJ may reasonably discredit the testimony. *See, e.g., Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995); *Anthony v. Sullivan*, 954 F.2d 289, 295–96 (5th Cir. 1992).

There is ample medical evidence in the record inconsistent with Plaintiff's hearing testimony. For example, Plaintiff testified that she suffers from constant and extreme pain and hallucinations, requires a cane to ambulate, and has poor concentration. (Tr. 16.) But the record contains evidence, cited by the ALJ, to the contrary, including notes from medical providers that Plaintiff presented with no apparent or acute distress, did not always require a cane for walking, and had normal concentration. (Tr. 396, 1284, 1547, 1571.) The ALJ also cited to evidence that indicated Plaintiff's normal functioning joints, gait, strength, and sensation, as well as normal findings on various mental health examination notes. (Tr. 351, 352, 361, 381.) In sum, because there were inconsistencies between Plaintiff's testimony and the record, the ALJ did not err in discrediting her testimony.

## V. Conclusion

Based on the foregoing, the Commissioner did not commit any reversible error at step three or in making his RFC determination, and substantial evidence supports the Commissioner's decision finding Plaintiff not disabled. The undersigned therefore **recommend**s that the Commissioner's decision finding that Plaintiff is not disabled be **AFFIRMED.**

## VI.  Instructions for Service and Notice of Right to Object/Appeal.

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as

a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The party shall file the objections with the Clerk of Court and serve the objections on all other parties.  A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.  *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000).  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

      SIGNED this 25th day of August, 2021.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE